## Commonwealth ex rel. v. Clearfield County Commissioners.

*Carl Belin* and *Boulton & Boulton,* for petitioners.

*A. M. Liveright,* for respondent.

CHASE, J., October 23, 1930.—The petition in this case sets forth that a certain section of road in Graham Township, or what is commonly known as the Allport-Bigler cut-off, was originally a turnpike road, upon which tolls were charged the traveling public; that for a great many years this turnpike ceased to be operated as a turnpike, but has been maintained as a public road since said abandonment as a turnpike. In 1927 this road was taken over by the State Highway Department as a part of the state highway system. Although the petition does not allege it, in the fall of 1929 the State Highway Department, building a cement road from Allport to Bigler over this cut-off, relocated the course of the road so as to abandon the portion of the highway involved in this proceeding. This mandamus proceedings is brought to compel Clearfield County to maintain this portion of the public road.

The petitioner maintains that the law governing is the Act of April 27, 1927, P. L. 392, which act provides in substance that when a section of a state highway has been relocated under authority of the law, the portion of the public road or highway abandoned by reason thereof shall be maintained by and at the expense of the authorities responsible for the maintenance of the said road or highway prior to its having been established as a state highway. In the instant case, although the Township of Graham maintained this road prior to its being taken over by the State Highway Department, nevertheless the petitioner contends that under the existing law—Act of April 25, 1907, P. L. 104—abandoned turnpikes should be properly repaired and maintained at the expense of the county, city or borough in which the said turnpike or parts thereof exist. The defendants, the county commissioners, for and on behalf of the county, contend that the General County Law of May 2, 1929, P. L. 1278, expressly repealed the Act of April 25, 1907, P. L. 104, in so far as it confers any powers or imposes any duties on the county, and relieves the county from responsibility of maintaining this road. In so far as the determination of the issue herein involved is concerned, the court would rest content in the disposition of the same without passing upon the questions raised by the respondents in this case, for, regardless of the effect of the General County Law in expressly repealing the Act of 1907, herein referred to, it does not become material in the determination of this issue. There is nothing in the County Law which in any way attempts or deals with the repeal of the Act of 1927,

placing the responsibility for maintenance of roads upon the authorities responsible for the said maintenance prior to its having been established as a state highway. Therefore, in this issue, if the evidence establishes that this road was abandoned as a turnpike prior to the time that the state took the same over, the Act of 1907 having placed the responsibility for maintenance on the county, and the Act of 1927, above referred to, having designated the responsibility in case of abandonment, the respondent would be responsible under the law for the maintenance of this road. The evidence in this case is ample and shows that this road in controversy was an abandoned turnpike. Therefore, this mandamus must prevail, upon due proof that the road in question was taken over by the State Highway Department and upon due proof that it has been abandoned; as a matter of fact, that action has been taken by the State Highway Department, but there is no record proving it in this case, and if the county commissioners insist on the record of proof, the court will permit the plaintiff to open up the case for that purpose in order that the records may be complete; however, as the court has said, the records of the highway department clearly show that there was a taking over by the State Highway Department of this section of the road and that it was abandoned by relocation. As has been said, it is not necessary for the court to deal with the question of whether or not the law, as to the liability of counties to maintain abandoned or condemned turnpikes, has been changed or affected by the General County Law; and what the law is the court will determine if the issue comes before it. It is sufficient to say at this time, in answer to the contention of the solicitor for the respondents, that, under the various acts of assembly and the decisions of the appellate courts, prior to the time of the passage of the General County Law, the county was responsible for the upkeep and maintenance of the same and that the County Law expressly repeals the act which places this responsibility on the county. As to the legal effect of this repeal there may be a serious question in view of the apparent conflict in the General County Law on the subject of roads; and, also, for the reason that the County Law in its declaration of the subject expressly states that the act shall not be construed to repeal any acts relating to state roads, state-aid roads, township and private roads; and further on (section three) provides that the provision shall not affect any act done, liability incurred or right accrued, etc. Again, under article ten, section 871, of this act, dealing with the subject of roads and highways, there is an attempt to set out certain procedure for the taking over of highways by the county commissioners with the consent of the grand jury and the court of quarter sessions. Again, section 946 of the law would indicate that it was the intention to change the policy of the law so that turnpikes running through unseated lands should be maintained by the county, and thereby relieve the county from the maintenance of turnpikes through seated lands. The wording used in this section is so ambiguous as to make it almost impossible for courts to interpret what the legislature intended to be the law under this section. This apparent conflicting section, together with the title to this act, raises a question which may require judicial interpretation before it can be determined what the effect of the General County Law is as to responsibility for maintenance and upkeep of turnpikes which are not already being maintained by the county under the law, or which are not affected by the act which controls the decision in this particular case, and it may not be amiss to state that the next session of the legislature, by appropriate legislation, should clarify this apparent conflict of the law and clearly set out the policy and purposes of the law as to the subject of liability for the maintenance of turnpikes.

In accordance with the conclusions of the court in this case, the court will make the following order:

Now, October 23, 1930, this case having been heard, and it appearing from the testimony that the prayer of the petitioner should be granted, it is ordered and directed that the attorney present a proper order, containing therein a description of the road in controversy, for approval by the court, providing, however, that if the county commissioners insist upon such testimony as it has been indicated is required to complete the records in this case, within ten days from this date, the plaintiff to produce such evidence at a time to be designated by the court; and upon failure of the county commissioners so to indicate this requirement within the time specified, the court will assume that the commissioners have taken notice of the evidence required from their records and the highway department records, and proof will not be required of the same.

From John M. Urey, Clearfield, Pa.